IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:11-CR-218-TWT-CCH |
| GLENN A. COOK and MAURICE JENKINS | : | |
| | : | First Superseding |

## **ORDER FOR SERVICE OF REPORT AND RECOMMENDATION**

Attached is the Report and Recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Criminal Local Rules 12.1(E) and 58.1(A)(3).

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. Failure to file an objection to the Report and Recommendation waives a party's right to review. Fed. R. Crim. P. 59(b)(2).

Pursuant to 18 U.S.C. 3161(h)(1)(D), the above referenced fourteen (14) days allowed for filing objections are **EXCLUDED** from the computation of time under the Speedy Trial Act. At the end of such fourteen-day period, the Clerk is **DIRECTED** to submit this Report and Recommendation to the District Judge.

After the submission of this Report and Recommendation to the District Judge, whether or not any objection has been filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time under the Speedy Trial Act the time, up to thirty (30) days, that this Report and Recommendation is under advisement before the District Court. *Henderson v. United States*, 476 U.S. 321, 331 (1986) (the Speedy Trial Act "exclude[s] all time that is consumed in placing the trial court in a position to dispose of a motion"); *United States v. Mers*, 701 F. 2d 1321, 1337 (11th Cir. 1983) ("[T]he magistrate and the district court have thirty days each during which to take pretrial motions under advisement.").

IT IS SO ORDERED this 22nd day of November, 2011.

                                                                C. CHRISTOPHER HAGY
                                                         UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA :
:
v. : CRIMINAL ACTION NO.
: 1:11-CR-218-TWT-CCH
GLENN A. COOK and MAURICE :
JENKINS : First Superseding

## **REPORT AND RECOMMENDATION**

Defendants Glenn A. Cook and Maurice Jenkins are charged in a multi-count indictment with drug trafficking, money laundering, and firearm offenses. The action is before the Court on the Preliminary Motion to Suppress [93] and Supplemental Motion to Suppress [115] filed by Defendant Maurice Jenkins, and the Preliminary Motion to Suppress [104] and Motion to Suppress Wiretap Intercepts [116] filed by Defendant Glenn A. Cook (collectively the "Motions to Suppress").

Both Defendants have moved to suppress wiretap evidence on the ground that the Government did not establish the inadequacy of other investigatory procedures and the consequent necessity to utilize a wiretap. The Government filed Responses to Defendant Cook's Motions to Suppress on September 16, 2011 [151], and to Defendant Jenkins's Motions to Suppress on October 6, 2011 [171]. Pursuant to this Court's Order of July 22, 2011, Defendants had fourteen (14) days to file reply briefs

to the Government's responses, or until September 30, 2011 (Defendant Cook), and October 20, 2011 (Defendant Jenkins). Defendants, however, did not file reply briefs and the Motions to Suppress were submitted to the undersigned on October 21, 2011.

Having reviewed the briefs of the parties and the applicable law, for the reasons set forth below, the undersigned **RECOMMENDS** that the Defendants' Motions to Suppress [93][104][115][116] be **DENIED**.

## **DISCUSSION**

**I.     STANDING**

In order to contest an order permitting the interception of communications, a defendant must establish that he was an "aggrieved person." 18 U.S.C. § 2518(10)(a). Such a person is defined in the relevant statute as a "person who was a party to an intercepted . . . communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). The courts have found that this statutory definition "should be construed in accordance with existing standing rules," *Alderman v. United States*, 394 U.S. 165, 176 n.9 (1969), so that one seeking to suppress intercepted communications must "allege, and if the allegation be disputed [must] establish, that

he himself was the victim of an invasion of privacy." *Jones v. United States*, 362 U.S. 257, 261 (1960).

In his Motions to Suppress, Defendant Jenkins has sought to suppress evidence obtained as a result of a Title III wiretap order issued by Judge Timothy Batten of the Northern District of Georgia on October 4, 2010 ("October 4, 2010 Order"). In addressing this Order, Defendant Jenkins submits that in October of 2010 his telephone communications were intercepted on six occasions, three times on October 7, and once each on October 19, 20, and 21, while he was talking to the individual (T'Michael Jones) on the target telephone that was tapped as a result of the October 4, 2010 Order. *See* Def. Supp. Mot. to Suppress [115] at 1-2. Based on that admission, the Government has conceded that Defendant Jenkins has standing to move to suppress evidence obtained as a result of the October 4, 2010 Order. Gov. Resp. Br. [171] at 1.

In Defendant Cook's supplemental Motion to Suppress Wiretap Intercepts [116], he has referenced wiretap orders of July 13, 2010, October 4, 2010, November 8, 2010 and January 31, 2011, but in his Preliminary Motion to Suppress [104] he limited his motion to conversations that were intercepted beginning in October of 2010 pursuant to an authorized wiretap for which T'Michael Jones was

the targeted individual. That describes the October 4, 2010 Order, and does not address the other three wiretap orders referenced in his supplemental motion. While he referenced the other three wiretap orders in the supplemental motion, he did not allege that his conversations were intercepted as a result of those wiretaps and he does not argue that any wiretap, other than the October 4, 2010 Order, was improperly issued. *See* Def. Mot. to Suppress Wiretap Intercepts [116] at 6-11. Thus, the undersigned finds that Defendant Cook is not contesting, or has abandoned his efforts to suppress, any evidence obtained from any wiretap order other than the October 4, 2010 Order.

As to the October 4, 2010 Order, the Government contends that Defendant Cook lacks standing. In his Motion to Suppress Wiretap Intercepts, however, Defendant Cook admits to having had four of his conversations with T'Michael Jones intercepted as a result of the October 4, 2010 Order. Def. Mot. to Suppress Wiretap Intercepts [116] at 6. The Government does not explain why this admission is not sufficient to give Defendant Cook standing to attack that order. His admission in his brief to having had his conversations intercepted in October of 2010 is not materially different from the more specific admissions made by Defendant Jenkins, which the Government concedes were sufficient to cloak Defendant Jenkins with standing to contest that order. Given that concession, the undersigned **RECOMMENDS** that both

4

Defendants be found to have standing to contest the legality of the October 4, 2010 Order.

**II.   APPLICABLE LAW**

   **A.   The Statute**

Title III, enacted by Congress as part of the Omnibus Crime Control and Safe Streets Act of 1968,[1] establishes a rigorous regime that the Government must follow to intercept the contents of any wire or oral communications. To obtain an order authorizing a wiretap, a federal agent must set forth not only information about the suspected offense and the evidence sought, but also a detailed statement as to whether alternative investigative techniques have been tried or, if not, why those alternatives would be futile or unreasonably dangerous. 18 U.S.C. § 2518(1)(c). An application for a Title III wiretap order must not only be approved by the local Office of the United States Attorney, but it must also be approved at the highest levels of the Justice Department under 18 U.S.C. § 2516, which ensures an additional layer of scrutiny and accountability. Only then may an application for a wiretap order be submitted to a United States District Judge, who must determine whether the application has fully

---

[1] Pub.L. No. 90-351, 82 Stat. 212 (codified as amended at 18 U.S.C. §§ 2510-20).

5

complied with the statute, including whether it has established the necessity for the use of a wiretap; that is, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).

### B. Standard of Review

In reviewing a district judge's determination to issue a wiretap order, the "order is presumed proper and the defendant bears the burden of overcoming this presumption." *United States v. Killingsworth*, 117 F. 3d 1159, 1163 (10th Cir. 1997). Further, if a district judge decides to authorize a wire intercept, that decision can be overturned, and the evidence obtained pursuant to such order suppressed, only upon a finding that the district judge abused his or her discretion in authorizing the wiretap. *See United States v. Sweeting*, 933 F.2d 962, 964 (11th Cir. 1991); *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990); *United States v. Comito*, 918 F.2d 95, 98 (9th Cir. 1990).

### C. Necessity

In this case both Defendants attack the October 4, 2010 Order on only one ground: they contend it was issued without the statutory requisite proof of the

necessity for the use of a wiretap to further an investigation. That is, they argue that the application for the order was insufficient to satisfy the condition of 18 U.S.C.§ 2518(3)(c) that there be no alternative means of investigation because "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). This standard, however, does not require that wire intercepts be the investigatory choice of last resort or that all other techniques prove futile before a wiretap may be used. The statute only requires a statement as to why other techniques "reasonably" appear unlikely to succeed or too dangerous to try. 18 U.S.C. § 2518(3)(c). The fact that government agents could have used other techniques in their investigation does not demonstrate an abuse of discretion by the court in issuing a wiretap order. *United States v. Carneiro*, 861 F.2d 1171, 1178 (9th Cir. 1988). To the contrary, government agents are entitled to use their common sense in determining when techniques other than wire intercepts may alert suspects, prove dangerous or be unproductive. *United States v. Baker*, 589 F.2d 1008, 1013 (9th Cir. 1979).

### D. Analysis

Based on the law set forth above, this Court's role is limited to reviewing the application submitted by the Government in seeking the October 4, 2010 Order and,

after considering the briefs of the parties, to determining whether the application adequately established necessity so as to support the October 4, 2010 Order or whether it was so lacking in that regard that Judge Batten abused his discretion in issuing that presumptively correct order.

At the outset, the Court notes that the Government's application for the subject wiretap order devoted twenty-five (25) of its forty-eight (48) pages to discussing investigatory alternatives to the use of wiretaps in this case. That is, more than one-half of the voluminous application addressed the need for a wiretap and the lack of reasonable alternatives. That discussion of alternatives and their shortcomings in this case included the following:

(a) Prior intercepted communications, while successful, did not reveal the identities of upper echelon drug trafficking organization ("DTO") members and were limited in usefulness because DTO members used multiple cell phones and often changed phones to thwart interceptions.

(b) Pen register and toll analysis, while also helpful, did and do not identify user of phones or content of their conversation.

(c) Physical surveillance was said to be inadequate in this case because it would not reveal what was being said and would require significant manpower to be meaningful because five (5) active properties used by the DTO had been identified and some of them could not be observed without substantial risk of detection. The application goes on to reveal that pole cameras have been employed because of the difficulties and risks associated with on site physical surveillance, but they have been unable to provide full coverage of who enters suspected sites used by the DTO or any coverage of what is occurring within the site.

(d) Electronic tracking devices were not used because targets of the proposed wiretap kept their vehicles behind fences or in garages that were not accessible and, in at least one instance, were monitored by a surveillance camera. Even if trackers could be installed, the wiretap application revealed that trackers would not provide the agents with needed information; such as who is operating a vehicle and its exact location.

(e) Geo-location data only provides limited information about where a cell phone is located, and does not necessarily provide information as to where the phone's user may be, particularly when, as in this case, the targets use multiple cell phones and often change phones.

(f) Grand jury testimony was considered unproductive because persons called to testify would likely assert their Fifth Amendment rights and highlight the fact of the investigation so as to drive the DTO further underground and lead to the destruction of evidence.

(g) Confidential sources, undercover agents, consensual monitoring and witness interviews were also addressed in the wiretap application. While some confidential sources had been utilized in the investigation prior to the application for the October 4, 2010 Order, the application discussed at length why these sources would not be expected to be useful going forward because they did not have access to or knowledge of DTO suppliers; why the use of undercover agents and consensual monitoring would not be expected to be successful or helpful at this stage in the investigation when the wiretap targets are unlikely to conduct drug transactions with persons not vouched for by a trusted associate and there was no such person known to the agents who could introduce and vouch for an undercover agent, and why witness interviews with low-level participants (drug couriers) in the DTO activities had not been helpful in identifying leaders of the organization, who were unknown to the interviewees, and would not be expected to be helpful to the investigation going forward for the same reason.

(h) Search warrant and consent searches were discussed but not thought useful because they would necessarily alert all members of the DTO to the investigation and prevent the agents from identifying and prosecuting all members of the organization.

(i) Finally, the application for the wiretap order discussed past efforts at obtaining information through searching the trash at suspected houses used by the DTO in its operations. Nothing useful was found in those past searches and the application asserted that trash searches were known to drug trafficking organizations in general, and consequently, not only are they careful not to dispose of evidence that could be discovered by a trash search, but they are also alert to evidence of trash searches so that utilization of that investigatory tool could reveal the scope of the investigation to the DTO.

Despite the substantial reasons discussed in the application supporting the need for the October 4, 2010 Order, Defendants argue that the reasons given are "boilerplate conclusions" that are insufficient to demonstrate necessity. Defendants, however, ignore the information specific to this case that is included in the application for the wiretap order in question. For example, the application addresses specific surveillance efforts made and its limitations in this case; the use of confidential informants in this case and its limitations; problems, specific to this case, with the use

11

of electronic tracking devices; interviews of witnesses and the experience in this case that only limited information was gathered from such efforts, and the ineffectiveness in this case of trash searches.

Further, the "fact that drug investigations suffer from common investigative problems" does not mean that an agent's assertions regarding necessity are boilerplate. *United States v. Milton*, 153 F. 3d 891, 895 (8th Cir. 1998). Thus, those assertions of need in the application in this case that are not unique to this drug case must be considered in judging whether the facts submitted to District Judge Batten were sufficient to show that a wiretap order should issue because "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous" as required by 18 U.S.C. § 2518(3)(c).

The burden to meet the standard of 18 U.S.C. § 2518(3)(c) and to show necessity is not high, *United States v. Farmer*, 924 F. 2d 647, 652 (7th Cir. 1991), and the Government is not required to show that it has exhausted all possible means of investigation before it has shown the necessity for the use of a wiretap. *United States v. Lopez*, 300 F. 3d 46, 52-53 (1st Cir. 2002). "The government affidavit is adequate if it satisfies the burden that it indicate a 'reasonable likelihood' that alternative

techniques would fail to expose the crime." *United States v. Ashley*, 876 F. 2d 1069, 1073 (1st Cir. 1989).

Based on the above discussion, the undersigned can only conclude that the application for the October 4, 2010 Order that was before Judge Batten satisfied the 18 U.S.C. § 2518(3)(c) necessity requirement. Accordingly, this Court finds that Defendants have failed to overcome the presumption that the October 4, 2010 Order was proper and further, that Judge Batten did not abuse his discretion in issuing that Order.

## **RECOMMENDATION**

For all the above reasons, the undersigned **RECOMMENDS** that Defendants' Motions to Suppress [93][104][115][116] be **DENIED.**

**IT IS SO RECOMMENDED** this 22nd day of November, 2011.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE